```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                           CHARLESTON

CONNIE E. TOZER,

        Plaintiff,

v.                                   CASE NO. 2:10-cv-00863

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
```

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Connie Tozer (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on March 26, 2008, alleging disability as of February 28, 2008, due to headaches, pain in the back, neck and knees and anxiety.  (Tr. at 11, 117-23, 124-26, 151.)  The claims were denied initially and upon reconsideration.  (Tr. at 57-61, 62-66, 71-73, 74-76.)  On October 22, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 77-78.)  The hearing was held on February 3, 2009, before the Honorable Valerie A. Bawolek.

(Tr. at 25-52.) By decision dated March 20, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-24.) Claimant submitted additional evidence to the Appeals Council, and on May 28, 2010, the Appeals Council determined that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. at 1-2.) On June 24, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe

impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, degenerative joint disease and anxiety disorder, not otherwise specified. (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 17.) Claimant has no past relevant work. (Tr. at 22.) The ALJ concluded that Claimant could perform jobs such as mail room clerk, file clerk, bench assembler, surveillance system monitor, hand packer, and product inspector, which exist in significant numbers in the national economy. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

4

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 28-29.) Claimant completed the ninth grade and attained her GED. (Tr. at 28-29.) She worked in the past, but it does not qualify as past relevant work. (Tr. at 28.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will briefly summarize it below.

Evidence before the ALJ

The record includes treatment notes and other evidence dated prior to Claimant's onset, which indicates Claimant was involved in a motor vehicle accident in 2002, wherein she complained of

cervical strain. (Tr. at 212-13.) Claimant sustained an injury to her neck and posterior shoulder girdle. (Tr. at 277.) X-rays on November 25, 2002, showed very mild osteoarthritis. (Tr. at 219.)

In 2005, Claimant underwent extracorporeal shock wave lithotripsy for treatment of a left proximal ureteral stone. (Tr. at 238.)

In September of 2007, Claimant underwent an MRI of the c-spine without contrast, which showed mild degenerative discogenic changes at the C4-C5 through C6-C7 levels and small disc bulges at the C5-C6 and C6-C7 levels without significant central canal stenosis. (Tr. at 257.)

On May 1, 2008, Ryan Newell, D.O. of Access Health Fayette Clinic examined Claimant. Claimant smoked one pack of cigarettes per day. She was advised to quit or cut down. Claimant presented for follow up regarding hypertension and hyperlipidemia. Both conditions were chronic and improving. Dr. Newell diagnosed hyperlipidemia, stable, neck pain, chronic, stable, and hypertension, stable. (Tr. at 293.) On September 11, 2008, Claimant presented for follow up regarding hypertension. Claimant had been without her medication for two months. Claimant also presented for follow up concerning hyperlipidemia that had been improving and for asthma. Dr. Newell diagnosed hyperlipidemia, hypertension, thyroid nodule (on MRI) and neck pain, chronic. He instructed Claimant to stop smoking. (Tr. at 289.)

On May 6, 2008, Serafino S. Maducdoc, Jr., M.D. examined Claimant at the request of the State disability determination service. Claimant reported that she injured her knee in a 1992 automobile accident. After her automobile accident, she had recurrent pain in her upper and lower back. (Tr. at 295.) Dr. Maducdoc found that Claimant had upper extremity strength of 5/5 and grip strength of 5/5 with normal fine manipulation. Ranges of motion in the hip, ankle, cervical spine and lumbar spine were normal. Lower extremity muscle strength was 4/4 with good effort. The neurological examination was normal. Dr. Maducdoc's impression was osteoarthritis, possible herniated nucleus pulposus, and chronic cervical and lumbosacral strain. (Tr. at 297.)

On May 14, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with an occasional ability to balance, stoop, kneel and crawl, limitations in reaching in all directions (including overhead), and a need to avoid concentrated exposure to extreme cold, noise, vibration and hazards. (Tr. at 307-14.)

On June 18, 2008, Misti Jones-Wheeler, M.S. completed a consultative mental examination at the request of the State disability determination service. (Tr. at 316-20.) She diagnosed anxiety disorder, not otherwise specified on Axis I and deferred an Axis II diagnosis. The Axis I diagnosis was rendered due to

7

Claimant's report of anxiety around a lot of people. (Tr. at 319.)

On July 1, 2008, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 322-35.)

Claimant reported to the emergency room on September 3, 2008, with complaints of exacerbation of chronic neck pain. (Tr. at 342-43.)

On September 27, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with an occasional ability to balance, stoop, and crawl, and a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 364-71.)

On January 22, 2009, Prakah Puranik, M.D. examined Claimant regarding her right knee pain. Claimant had been wearing a brace for two months and taking oral antiinflammatories. Dr. Puranik diagnosed osteoarthritis, right knee and possible medial meniscal tear, right knee. He recommended an MRI. (Tr. at 388.)

The MRI on February 2, 2009, showed no meniscus tear, no abnormal signal intensity in the anterior and posterior cruciate ligaments and collateral ligaments and a small Baker's cyst in popliteal fossa and a minimal amount of joint effusion. (Tr. at 391.)

At the administrative hearing, Drs. Marshall and Tessenger testified about Claimant's physical and mental impairments. (Tr.

at 39-47.) Dr. Marshall limited Claimant to light work, further limited by the ability to perform overhead work because of her shoulder, that she can only occasionally kneel, crouch and crawl, and that she should avoid extreme cold and heat. (Tr. at 44-45.) Dr. Tessinger testified that Claimant should avoid working with the general public and in crowded conditions and that she is limited to unskilled types of work. (Tr. at 46.)

Appeals Council

On March 16, 2009, Dr. Puranik noted the results of the MRI and indicated that Claimant has osteoarthritis of the right knee. He recommended that Claimant go to physical therapy. (Tr. at 417.) On April 13, 2009, Dr. Puranik saw Claimant again for complaints of knee pain. X-rays did not show any evidence of significant abnormalities, and Dr. Puranik observed that Claimant's knee pain was out of proportion to the x-ray and clinical findings. Dr. Puranik opined that Claimant's problems were coming from her back. He recommended chiropractic treatment. He diagnosed early osteoarthritis, both knees and chronic back pain. (Tr. at 418.)

Claimant submitted hospital notes from an admission dated May 5, 2009, when Claimant was admitted for an incarcerated umbilical hernia. Claimant underwent repair with Bard Ventralex hernia patch. (Tr. at 422.)

On June 8, 2009, thyroid ultrasound showed a palpable thyroid lump. (Tr. at 432.)

The record includes a handwritten treatment note from Dr. Hasan dated January 15, 2010. (Tr. at 438.)

On January 15, 2010, L.E. Synder, D.D.S. diagnosed multiple dental caries, periodontal disease, chronic periapical abscesses, hypertension, asthma, arthritis and anxiety. Dr. Snyder removed Claimant's remaining teeth under general anesthesia. (Tr. at 439.)

On April 4, 2010, Claimant reported to the emergency room with complaints of redness and swelling at the site of an IV in her arm following a recent colonoscopy. She was diagnosed with thrombophlebitis/cellulitis, abdominal pain secondary to biliary dyskinesia with ejection 16%. (Tr. at 443, 446.)

On March 3, 2010, Claimant underwent a CT scan of the head without contrast, which showed no intracranial disease. (Tr. at 486.)

Analysis

The Commissioner moved to dismiss this matter for failure to prosecute because Claimant did not file a brief in support of her complaint. Claimant did not respond to the motion, but the court denied it. (ECF No. 16.) Thereafter, the Claimant did not file a brief in support of the complaint. The Commissioner filed a brief in support of the Commissioner's decision. The Commissioner argues that substantial evidence supports that ALJ's decision that Claimant was not disabled because she could perform substantial gainful activity. (Def.'s Br. at 11-19.)

In her decision, the ALJ found that Claimant's severe impairments, degenerative disc disease, degenerative joint disease, and anxiety disorder, not otherwise specified, did not meet or equal a listing, but that Claimant's residual functional capacity was limited to light work further limited to an inability to climb ladders, ropes and scaffolds, an occasional ability to kneel, crouch, bend and crawl, an inability to work with her arms overhead or reach overhead with the nondominant arm, an inability to work in extreme cold, a need to sit and stand from time to time to alleviate her symptoms, a need for simple job instructions and an inability to work with the general public or in crowded conditions. (Tr. at 13-17.)

The court finds that the ALJ's residual functional capacity finding is supported by substantial evidence. The ALJ's finding reflects the substantial evidence of record from treating, examining and nonexamining sources of record. In making this finding, the ALJ adequately weighed the medical evidence of record in keeping with the applicable regulations. 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). (Tr. at 20-22.)

Furthermore, the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir.

1996). The ALJ determined that Claimant had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (Tr. at 18.) Her decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 18-20.)

Finally, Claimant submitted additional evidence to the Appeals Council, which does not provide a basis for changing the ALJ's decision. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991) (the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence). Dr. Puranik's treatment notes in March and April of 2009, do not provide objective evidence of a worsening of Claimant's condition. Instead, on March 16, 2009, Dr. Puranik stated the results of the MRI that was already before the ALJ and indicated that Claimant has osteoarthritis of the right knee, a diagnosis he had already made. Notably, Dr. Puranik recommended conservative treatment, that Claimant go to physical therapy. Much of the remainder of the evidence submitted postdates (in some cases significantly) the ALJ's March 20, 2009, decision.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by

substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 22, 2011

                                        Mary E. Stanley
                                        United States Magistrate Judge